IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

**Alexandria Division**

| | | |
|---|---|---|
| Donald Herrington, | ) | |
|     Petitioner, | ) | |
| | ) | |
| v. | ) | 1:19cv215 (AJT/IDD) |
| | ) | |
| Harold W. Clarke, | ) | |
|     Respondent. | ) | |

MEMORANDUM OPINION

Before the Court is a motion to dismiss Virginia state prisoner Donald Herrington's petition for writ of habeas corpus. See Dkt. No. 37. Respondent opposes the motion. See Dkt. Nos. 44-45. For the reasons explored below, it is clear that petitioner is not entitled to relief, and respondent's motion to dismiss must be granted.

**I. Background**

This case traces its origins to 2012, when petitioner was arrested and charged with possession with intent to distribute or sell a Schedule I or II controlled substance, to wit oxycodone. Petitioner's road to trial was neither short nor straight. At an August 28, 2012 preliminary hearing, Judge Levy of the Stafford General District Court found a lack of probable cause with respect to the element of intent, reduced petitioner's charge from possession with intent to simple possession, and certified that charge to a grand jury. Trial Transcript ("Tr. Trans.") November 1, 2012, pp. 4-5. Despite the judge's reduction of the charge, on October 1, 2012, the Commonwealth sought and secured from the grand jury an indictment of the original charge: possession with intent. Id. at pp. 6-12. Petitioner was ultimately arraigned on that charge in the Stafford Circuit Court on November 1, 2012. Id. at pp. 15-19.

The first two attorneys appointed to represent petitioner at trial, Donald Hur and Andrew Cornick, were forced to withdraw after discovering conflicts of interest arising out of their representation of other individuals entangled with petitioner's prosecution.  See Tr. Trans. December 17, 2012, pp. 1-7.

After Attorney Cornick withdrew, petitioner expressed an interest in representing himself at trial.  Tr. Trans. January 8, 2013, p. 4.  Judge Donald Haddock stated that he was not opposed to granting petitioner's request, but first wanted to appoint a new attorney with whom petitioner could discuss strategy and the wisdom of self-representation.  Id.  Accordingly, the judge appointed attorney Joe Brown to represent petitioner and continued the case to allow Brown to acquaint himself with the defendant and the facts.  Id. at p. 10.  Petitioner inquired whether the delay associated with appointing counsel would be attributed to him as it related to the question of speedy trial rights, and the judge answered the question in the affirmative.  Id. at pp. 10-11.

After additional continuances attributable to both sides—and after the denial of a speedy-trial-based motion to dismiss—petitioner's trial occurred on March 11, 2013.  Tr. Trans. March 11, 2013.  The Court of Appeals of Virginia summarized the evidence presented at trial as follows:

> On May 25, 2012, Deputy Kurt McBride of the Stafford County Sheriff's Department was working with an informant to arrange an undercover purchase of drugs. Using the informant's cell phone, and posing as the informant, McBride exchanged text messages sent to a person known as "Don" on another cell phone (the second phone). McBride asked "Don" to "hit [him] up" when he was nearby the next day, and asked what "number I can look forward to." McBride received a response that he would get "at least thirty."

> On May 26, 2012, the informant's phone received text messages from the second phone that he had gotten "30s instead." A text advised McBride that they were leaving a "store in Woodbridge" and that "they r v." McBride responded by text asking what type of car he would be driving. The second phone called the informant's phone, and McBride observed the informant having a conversation. They agreed to meet at a McDonald's restaurant.

2

A series of text messages were exchanged regarding the meeting. Finally, the second phone sent a text message "I am here." The police observed appellant in the passenger seat of a green sedan that Andrea Flood was driving. The police confronted appellant and Flood. The second phone, which appellant admitted was his, was on the center console of the vehicle. The police observed two bulges near appellant's waistband. One bulge was appellant's wallet, which contained $496 in cash. The wallet also contained twenty blue oxycodone pills and six orange pills packaged in cellophane. The other bulge was an unmarked prescription drug bottle containing 109 blue oxycodone pills and five unidentified orange pills. Earlier in the day on May 26, 2012, appellant traveled with Kim Burgess and Flood to Dr. Gupreet Bajwa's office, where Burgess obtained a prescription for 180 pills of oxycodone. They traveled to a pharmacy in Lorton, where Burgess filled the prescription.

An expert witness who examined the blue pills found on appellant indicated that they were thirty milligram tablets. They were also marked with a "V," which is indicative of a greater street value.
/
Appellant produced evidence that on May 7, 2012, Bajwa wrote a prescription for appellant for 180 oxycodone pills. Appellant testified that Flood, who was his girlfriend on the date of his arrest, abused pain medication. Appellant claimed that both Flood and Burgess were using his phone on May 26, 2012. He said he thought he was going to be meeting an individual to get Dilaudid pills for Flood and to repay that person a portion of a debt owed by Flood. Appellant said he did not send all the text messages that the Commonwealth had introduced into evidence. He said that he had the bottle of pills with him because the safe at his home had been broken, and he worried that one of the people living with him might take the medication when he was not home. Appellant said he made money by buying and selling various types of merchandise, but was not dealing drugs. Appellant admitted having prior felony convictions.

Record No. 1083-13-4.  The jury found petitioner guilty and, after a sentencing trial,

recommended he face a fifteen-year term of incarceration and a fine of $200,000.  Tr. Trans.

March 12, 2013.

Petitioner, represented by James Ilijevich, noted an appeal, raising six assignments of

error:

1. The Trial Court erred when denied [sic] the defendant's motion quash the amended indictment which had been certified by the General District Court as a different offense.

2. The Trial Court erred when it denied the defendant's motion to waive counsel and to represent himself at trial.

3. The Trial Court erred by not granting the defendant's Motion to Dismiss the indictment as it was tried after the Speedy Trial time limit set by Virginia Code Section 19.2-243.

4. The Trial Court erred by abusing its discretion by granting the Commonwealth's Motion to Continue on February 20, 2013 when the Commonwealth did not show good cause for the continuance.

5. The Trial Court erred by abusing it [sic] discretion by failing to Order a mistrial following multiple inappropriate and prejudicial comments about the defendant by the Commonwealth.  Such comments resulted in the defendant's right to a fair trial being prejudiced.

6. The Trial Court erred by failing to strike the Commonwealth's evidence, and the finder of fact erred by finding the defendant guilty of possession of a Schedule I/II substance, with intent to distribute, when there was no credible evidence that the defendant arranged a drug transaction and that the narcotic pills, oxycodone, found on his person were not lawfully his pills, obtained through a valid prescription.

Record No. 1083-13-4.  The Court of Appeals of Virginia affirmed petitioner's conviction and later denied a petition for rehearing en banc.  Id.  Petitioner appealed once more, raising the following four grounds for relief:

1. The Trial Court erred when denied the defendant's motion to quash the indictment amended by the Commonwealth, which had been certified by the General District Court as a different offense.

2. The Trial Court erred when it denied the defendant's motion to waive counsel and to represent himself at his trial.

3. The Trial Court erred by not granting the defendant's motion to dismiss the indictment as it was tried after the Speedy Trial time limit set by Virginia Code Section 19.2-243.

4. The Trial Court erred by abusing its discretion when granting the Commonwealth's Motion to Continue on February 20, 2013 when the Commonwealth did not show good cause for the continuance.

Record No. 150085.  The Supreme Court of Virginia heard petitioner's appeal and, in a published February 12, 2016 opinion, affirmed the conviction.  See id.; Herrington v. Commonwealth, 291 Va. 181 (2016).

4

Petitioner next filed a petition for writ of habeas corpus in the Supreme Court of Virginia. See Record No. 170372.  The petition was difficult to read and understand but appeared to raise the following claims:

1. Plain Error, Abuse of Discretion, Void Judgment Fundamental Constitutional Error

2. Ineffective Assistance of Counsel and/or Constructive Denial of Representation at Trial[1]

3. Unlawfully Obtained Indictment DH was Sentenced Outside Statutory Maximum Missconduct [sic], Fatal Variance, The Virginia Courts Employed Procedure it Could Not Lawfully Adopt Order Void

4. Prosecutorial Misconduct, False Statments [sic], Withholding of Exculpatory Evidence, Knowing Use of False / Perjured Testimony & Altered Evidence, Two Contradive [sic] Theories of Guilt at Two Separate Trials. The Court did not Rule with Fairnes GRD. 1 Insupport of HN 1 HN 23 [sic].

Record No. 170372.

The Supreme Court of Virginia directed the trial court to conduct an evidentiary hearing with respect to one of the many subclaims petitioner raised under Claim Two.  See Record No. 170032.  The specific subclaim at issue argued that trial counsel had misled petitioner as to the speedy trial clock, thereby influencing him not to accept a plea deal as he otherwise would have. Id.  The trial court held the ordered hearing and transmitted its factual findings to the state supreme court, which later denied petitioner relief in a thorough opinion dated December 20, 2018.  Id.

---

[1] Petitioner dedicated roughly twenty-five pages of single-spaced text—interspliced with headnotes, footnotes, legal citations, and incomprehensible streams of consciousness—laying out dozens of subclaims.  See Record No. 170372.  In its comprehensive opinion denying petitioner relief, the Supreme Court of Virginia parsed these many subclaims.  Because petitioner has not raised the majority of those subclaims in his petition, see Dkt. No. 33, they shall not be listed here.  Instead, the subclaims petitioner has raised will be described in greater depth in the analysis section of this Memorandum Opinion.

Later, petitioner sought relief from the state supreme court with respect to the trial court's correction of a scrivener's error on the sentencing order in petitioner's criminal case.  See Record No. 181594; Dkt. No. 44.  Finding no reversible error as to the trial court's action, the Supreme Court of Virginia denied petitioner relief through a September 24, 2019 order.  Id.

Petitioner's federal petition followed.  See Case No. 1:19cv215 (AJT/IDD).  Its claims are explained in greater depth below.

## II.  Standard of Review

To obtain federal habeas relief, a state prisoner must demonstrate that he or she is "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") limits a federal court's authority to grant habeas relief.  Pursuant to AEDPA, when a state court has addressed the merits of a claim later raised in a federal habeas corpus petition, the reviewing federal court may not grant relief as to the claim unless the state court's adjudication was (1) contrary to or an unreasonable application of clearly established federal law or (2) was based on an unreasonable determination of the facts presented at the state court proceeding.  28 U.S.C. § 2254(d)(1)-(2).

A state court's decision is "contrary to" federal law if it "arrives at a conclusion opposite to that reached by [the United States Supreme] Court on a question of law or if the state court decides a case differently than [the United States Supreme] Court has on a set of materially indistinguishable facts."  Williams v. Taylor, 529 U.S. 362, 413 (2000).  A federal court should grant relief under the "unreasonable application" clause if it finds that the state court "identifies the correct governing legal principle from [the United States Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  Id.

6

In determining whether a state court's decision was based on an unreasonable determination of facts, a federal court reviewing a habeas petition "presume[s] the [state] court's factual findings to be sound unless [petitioner] rebuts 'the presumption of correctness by clear and convincing evidence.'"  Miller-El v. Dretke, 545 U.S. 231, 240 (2005) (quoting 28 U.S.C. § 2254(e)(1)).  "The Supreme Court has found state factual findings unreasonable under § 2254(d)(2) when the direction of the evidence, viewed cumulatively, was 'too powerful to conclude anything but [what the petitioner claims],' and when a state court's finding was 'clearly erroneous.'"  Landers v. Warden, Atty. Gen. of Ala., 776 F.3d 1288, 1294 (11th Cir. 2015) (quoting Miller–El, 545 U.S. at 265).

### III.  Analysis

Petitioner previously filed a petition for writ of habeas corpus related to different criminal charges raised against him.  See Case No. 1:16cv412 (AJT/MSN).  The current petition, like the last, consists of a series of nearly incomprehensible documents raising an uncountable number of arguments buried in shorthand abbreviations, cross-references to other filings and trial transcripts, and confusing punctuation.  Indeed, the petition and supporting documents are tangled webs of loosely related and barely coherent arguments, frequently supported only tenuously by legal authority.  What follows is a direct quotation from the petition that is emblematic of the entire submission:

> If JB had not remained silent but told DH he was in danger of PWI when the judge informed DH on 2-20-13 that he was on trial for SP, "an important date". [See SCC Order Case No. CL-18-479 (5-29-18) Pg. 4 Par. 2 "February 20, 2013 is an important date"]. What if JB told DH when agreed with JS that he was on trial for SP constant with the OCIS, CCIS, 10 continued custody orders, friend's family or OCIS.

Dkt. No. 33-1, p. 15.  The petition is so drafted despite the Court's numerous admonitions that petitioner should simplify his language and present his grounds for relief clearly using headings.

See, e.g., Dkt. No. 29, p. 3 ("[P]etitioner is encouraged to state in as simple a manner as possible the grounds he seeks to pursue in this Court, constructing headings such as, for example, "Ground One: Ineffective Assistance of Trial Counsel."  Where petitioner refers to state habeas petitions to demonstrate exhaustion, he should do so in the body of his argument.").

Despite the rambling nature of the petition, respondent has endeavored to identify and respond to the grounds for relief petitioner has raised.  This is not to say that petitioner believes respondent has succeeded.  Indeed, in his "traverse," petitioner avers respondent "ignores 95% of claims" and "goes off on several weird tangents."  See Dkt. No. 45, p. 4.  Unfortunately, petitioner's efforts to clarify the grounds for relief respondent allegedly overlooked do not successfully make clear petitioner's arguments for the Court's consideration.  Even so, the Court has painstakingly reviewed every document petitioner has submitted and—liberally construing those documents—identifies the following claims:

1. Miscarriage of Justice

2. Trial counsel was ineffective for "fail[ing] to object or g[iving] bare bones arguments" regarding the following:
   a. The alleged First Amendment violation born of the fact that the Virginia state court system's website showed that petitioner had been charged with simple possession of a controlled substance when, in actuality, he faced a charge of possession with intent to distribute a controlled substance;
   b. The alleged Fifth, Sixth, and Fourteenth Amendment violations—namely the denial of a public trial, the violation of the right to assemble, to exercise free speech, and to access the courts—that arose from the state website's display of incorrect charging information;
   c. The alleged Fifth, Sixth, and Fourteenth Amendment violations—namely the denial of the right to prepare a defense—that arose from the state website's display of incorrect charging information.

3. Trial counsel was ineffective for miscalculating and thus incorrectly informing petitioner of the correct speedy trial with respect to his criminal case.

4. Trial counsel was ineffective for failing to insist upon the provision of jury instructions regarding an "accommodation defense" to petitioner's possession with intent to distribute charge.

5.  Trial counsel was ineffective for failing to investigate witnesses and evidence and moved "to quash critical evidence."

6.  Petitioner's rights under the Fifth, Tenth, and Fourteenth Amendment were violated when prosecutor Tara Mooney committed fraud on the court by improperly obtaining an indictment against petitioner.

7.  Petitioner's rights under the Sixth and Fourteenth Amendments were violated when the trial court made an improper and untimely amendment to petitioner's sentencing order.[2]

See Dkt. No. 33.

## A.    <u>Ground One – Miscarriage of Justice</u>

Petitioner's explanation of his first ground for relief—which alleges a "miscarriage of justice"—is extraordinarily brief.  Petitioner claims only that, "In violation of the 1st, 5th, 6th, 10th, and 14th Amedment [sic] to the U.S. Constitution, DH was denied his Constitutional rights when a miscarriage of justice occurred."  <u>See</u> Dkt. No. 33, p. 1.  Petitioner does not explain his arguments for miscarriage of justice and merely attempts to bootstrap this argument to the other claims raised in his petition.  <u>See id.</u> ("Ineffective Assistance of Counsel (IAC hereafter) and regular claims should be considered for Miscarriage of Justice (Infra).").

The Court declines to assume or invent from whole cloth the content of petitioner's "miscarriage of justice" arguments and finds that he is not entitled to relief based on the conclusory nature of the petition.  <u>See, e.g.</u>, <u>Powell v. Shanahan</u>, No. 3:13-cv-496-FDW, 2014 WL 1464397, at *8 (W.D.N.C. Apr. 15, 2014) ("[U]nsupported and conclusory allegations … are insufficient to warrant either an evidentiary hearing or habeas relief."); <u>Oliver v. Braxton</u>,

---

[2] Claims Six and Seven were included as subclaims D and E under petitioner's ineffective assistance of counsel heading.  <u>See</u> Dkt. No. 33, pp. 2-3.  Trial counsel, however, clearly raised the theory underlying Claim Six before trial and on appeal.  And because Claim Seven did not arise until 2017, long after petitioner's trial had concluded, counsel could not have raised this issue at the time.  Accordingly, although petitioner has lodged these claims under an ineffective assistance umbrella, they will not be assessed from that perspective.

No. 01-349-AM, 2001 WL 34633625, at *7 (E.D. Va. Nov. 8, 2001) ("It is elementary that a petition of this nature must allege facts and that mere conclusions or opinions of the pleader will not suffice to make out a case.") (quotation and internal citation omitted).  Claim One is therefore denied.

**B.**     **Grounds Two through Five – Ineffective Assistance of Counsel**

Petitioner raises a host of arguments under the umbrella of ineffective assistance of counsel.  A broad statement of the doctrine's requirements provides a useful foundation on which to analyze the claims.  To prevail as to an ineffective assistance of counsel claim, a petitioner must demonstrate that his attorney's performance was deficient and that the deficient performance prejudiced his defense.  See Strickland v. Washington, 466 U.S. 668 (1984).  To satisfy the deficient performance prong, the convicted defendant must overcome the "strong presumption that counsel's strategy and tactics fall within the wide range of reasonable professional assistance."  Burch v. Corcoran, 273 F.3d 577, 588 (4th Cir. 2001) (internal quotations omitted).  The prejudice component requires a petitioner to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Strickland at 694.

"Surmounting Strickland's high bar is never an easy task," Padilla v. Kentucky, 559 U.S. 356, 371 (2010), and "[e]stablishing that a state court's application of Strickland was unreasonable [or contrary to clearly established federal law] under § 2254(d) is all the more difficult," Harrington v. Richter, 562 U.S. 86, 105 (2011).  Application of these two layers of deference effectively limits a federal court's review to a determination of "whether there is any reasonable argument that counsel satisfied Strickland's deferential standard."  Id.

"Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective." Martinez v. Ryan, 566 U.S. 1, 17 (2012).  To demonstrate that the underlying ineffective assistance claim is "substantial," the petitioner must show that that claim has "some merit."  Id. at 14.

    *1.*     *Grounds 2(A)-(C)*

Grounds 2(A) though 2(C), although parsed into different claims by petitioner, are based on the same allegations of fact—that the Commonwealth of Virginia's Online Case Information System displayed incorrect information with respect to the charges petitioner faced in the Stafford County Circuit Court.  Specifically, petitioner claims that, until 2017, the state's website reflected that petitioner had been charged with and was being prosecuted for possession of a controlled substance.  The website did not show that petitioner had been indicted for possession with intent to distribute a controlled substance—a more serious offense.  This error was apparently attributable to confusion that occurred in the wake of petitioner's August 28, 2012 preliminary hearing.  Although at that hearing the judge reduced petitioner's charge to one of simple possession, the Commonwealth later sought and gained an indictment for the possession with intent charge.  This information was not published online.  In his subclaims, petitioner argues that his counsel's failure to raise the incongruence between the state court's website and the true nature of his prosecution violated a host of his constitutional rights.

It does not appear to the Court that petitioner raised these claims in his state court proceedings.  Nevertheless, pursuant to Martinez, the claims are not necessarily procedurally defaulted, and, at this posture, the Court reviews them to determine whether they possess "some

merit." Martinez, 566 U.S. at 14.  For the reasons explained below, the claims lack merit and will therefore be denied.

In his first subclaim, petitioner asserts that "the Supreme Court of the United States … has recognized the U.S. Constitutional rights to access correct court information, assemble, and free speech [sic]."  Dkt. No. 33, p. 14.  Undoubtedly, "[t]he public enjoys a qualified right of access to criminal trials … and documents submitted in the course of a trial." In re The Wall St. J., 601 F. App'x 215, 218 (4th Cir. 2015) (internal quotations and citations omitted).  This Court is unable, however, to locate any precedent to sustain petitioner's argument that individuals possess a constitutional right to access "*correct* court information."  Instead, the constitutional right in question attaches only to access to trials and documents, see id., things petitioner does not allege he or anyone else was denied.

Nor has the Court located any authority to support petitioner's arguments he was denied his rights to peaceably assemble and speak.  With respect to the assembly claim, petitioner appears to argue that, had the information in the state's computer system correctly identified his criminal charges, other individuals would have attended his criminal proceedings.  Petitioner, though, has not alleged any facts that show the state took affirmative action to interfere with the ability of any party to attend his trial and has thus failed to state any freedom of assembly claim. See, e.g., Nat'l Socialist White People's Party v. Ringers, 473 F.2d 1010, 1015-16 (4th Cir. 1973).  Petitioner's basis for his free speech claim is difficult to identify.  Based on the petition's allegations, it is possible that petitioner seeks to argue that his right to *receive* speech from others has been violated.  See Willis v. Town of Marshall, N.C., 426 F.3d 251, 259–60 (4th Cir. 2005). That right extends to attending criminal proceedings and accessing related documents.  See In re Washington Post Co., 807 F.2d 383, 388-90 (4th Cir. 1986)  But to state a claim for relief under

12

this theory, one must allege that the state took some action to prevent access to the criminal proceedings.  See Greater Balt. Ctr. for Pregnancy Concerns v. Mayor & City Council of Balt., 879 F.3d 101, 110–11 (4th Cir. 2018) (emphasizing state's role in restricting speech in a First Amendment claim).  As was the case with his assembly claim, petitioner has failed to offer sufficient factual allegations that this was so.  Accordingly, petitioner has not convinced this Court that trial counsel's failure to argue these points constituted deficient performance or would have led to a different outcome.

Petitioner also suggests that counsel improperly failed to highlight how the state's computer system denied petitioner his rights to a public trial and to access the courts.  These claims, too, are unavailing.  The Sixth Amendment to the United States Constitution guarantees that, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial."  U.S. Const. amend. VI.  "The requirement of a public trial is for the benefit of the accused; that the public may see he is fairly dealt with and not unjustly condemned, and that the presence of interested spectators may keep his triers keenly alive to a sense of their responsibility and to the importance of their functions."  Waller v. Georgia, 467 U.S. 39, 46 (1984) (quoting Gannett Co. v. DePasquale, 443 U.S. 368 (1979)).

Petitioner states that "the overwhelming evidence is that many would have testified during the trial or at sentencing " had they been correctly advised of the charges against petitioner.  See Dkt. No. 33, p. 17.  Petitioner, however, brings to the Court's attention none of the "overwhelming evidence" he claims to possess; all he brings is the speculative and conclusory statement that his trial would have proceeded differently had the state court's website been correct.  This is insufficient to support a viable claim.  See Bradford v. Whitley, 953 F.2d 1008, 1012 (5th Cir. 1992) (stating ineffective assistance of counsel claims that are based on

speculation do not meet the burden of showing prejudice under Strickland); see also Bruce v. Robinson, No. 9:09-1383-PMD-BM, 2010 WL 4318871, at *8 (D.S.C. July 22, 2010) (stating a habeas petitioner's speculation, without evidence, that the outcome of his trial would have been different absent counsel's purported deficiencies, does not satisfy the prejudice prong of Strickland), appeal dismissed, 418 F. App'x 202 (4th Cir. 2011). It additionally bears noting that, as a criminal defendant, petitioner was entitled to call witnesses on his own behalf at the guilt and sentencing stages of his prosecution. He therefore could have called the individuals he claims were denied access, and his decision not to do so cannot be blamed on incorrect information displayed on the state's website.

Finally, the basis of petitioner's argument that he was denied his right to prepare a defense appears to be that he and his attorney were unaware that he had actually been charged with possession with intent to distribute as opposed to simple possession. Petitioner claims that "we have no idea when defense counsel [] figured out that [petitioner] was on trial for [possession with intent]." Dkt. No. 33, p. 18.

The record utterly belies any such argument. Indeed, it is clear that attorney Joe Brown was appointed to represent petitioner on December 17, 2012, and that the court's January 27, 2013 appointment order reflected that petitioner had been charged with possession with intent. See Tr. Trans. December 17, 2012, pp. 10-12; Joint Appendix Volume I, p. 50. At a January 28, 2013 hearing, Judge Sharp, petitioner, and Attorney Brown explicitly discussed the fact that petitioner had been charged with possession with intent:

THE COURT: You're Donald Arthur Herrington?

PETITIONER: Yes, sir.

THE COURT: And you're before the Court because you have a felony charge or possession with intent to distribute or sell a one or two controlled substance. You're familiar with that, correct?

PETITIONER: Yes, Your Honor.

THE COURT: All right. Now, Mr. Brown, of course, has been previously appointed to represent you, and this case was continued to today for status.

Tr. Trans. January 28, 2013, p. 2.

Petitioner's trial did not occur until March 11, 2013, and counsel therefore had a minimum of forty-two days to prepare for trial equipped with the knowledge of the specific offense with which petitioner had been charged.  Counsel initially even acceded to a February 20, 2013 trial date, but the trial was ultimately moved on the request of the Commonwealth. See Tr. Trans. January 28, 2013, pp. 4-7.  Accordingly, there is simply no factual basis for petitioner's argument that the charges against him were so shrouded in mystery that he was denied an opportunity to prepare a defense.  On this basis, the Court finds that trial counsel's performance was not deficient and there is no reasonable probability of a different outcome had trial counsel raised this issue.

    2.    *Ground Three*

In Ground Three, petitioner avers that his trial counsel was ineffective by failing to correctly advise him regarding the calculation of the speedy trial period.  Petitioner avers that, but for counsel's error, he would have accepted a plea agreement prior to trial, thereby limiting his risk of receiving a lengthy prison sentence.  During the state habeas proceedings, at the direction of the Supreme Court of Virginia, this claim was subjected to additional fact-finding at the trial court level.  In line with the state supreme court's directive, the trial court conducted an evidentiary hearing on the issue on April 25, 2018.  The trial court took testimony from

petitioner and the attorneys who had represented him, summarized its findings, and transmitted

them to the high court, which ultimately found petitioner was not entitled to relief, stating:

> The Court holds this portion of claim (2) does not satisfy the "prejudice" prong of the two-part test enunciated in *Strickland*. The record, including the trial transcript and the transcript of the evidentiary hearing, demonstrates petitioner's trial began 195 days after his preliminary hearing and 161 days after his indictment. The continuances charged to petitioner, including the sixteen-day continuance following the hearing in which petitioner requested he be allowed to represent himself, amounted to fifty-six days. If the speedy trial clock began on the date of the preliminary hearing and the sixteen-day continuance was not charged to petitioner, his trial would have commenced outside the speedy trial period at 155 days, and it was on this ground that petitioner's counsel moved to dismiss the case. The trial court denied the motion, and the Court of Appeals of Virginia and this Court affirmed, holding "petitioner's speedy trial time period began to run on the date of his indictment, not, as petitioner argued, the date of the preliminary hearing." *Herrington*, 291 Va. at 186-87, 781 S.E.2d 561, 564. Ron Hur, petitioner's first attorney, testified at the evidentiary hearing that he represented petitioner at his preliminary hearing on August 28, 2012. Hur advised petitioner "the speedy trial clock began to run on the date of the preliminary hearing." Hur was replaced as counsel by Andrew Cornick on December 17, 2012. Cornick represented petitioner until January 8, 2013. He testified he did not recall any specific advice he gave petitioner regarding his right to a speedy trial. Joseph Brown was appointed to represent petitioner on January 8, 2013, and represented him at the trial on March 11, 2013. Brown testified he advised petitioner the speedy trial clock began to run  on the day of the preliminary hearing. Brown explained that when he moved the trial court to dismiss the indictment for lack of a speedy trial pursuant to Code § 19.2-243 he believed the only issue was whether the sixteen-day delay after the January 8, 2013 hearing when petitioner asked to represent himself would be counted against petitioner. Brown also testified he believed the speedy trial issue to be a "solid issue," but not a "slam dunk issue," that he shared that opinion with petitioner after trial, and that he would never have said to petitioner he could "almost guarantee" petitioner would succeed if he appealed the trial court's denial of his speedy trial motion.

> Moreover, the record does not support petitioner's contention that he would have pled guilty or no contest had he known speedy trial began to run from the date of the indictment. Hur testified he "had no discussions regarding any plea negotiations with either [petitioner] or [the prosecutor]." Brown testified petitioner "was not willing to plead guilty to a felony" and Brown did not recall the Commonwealth making an offer to allow petitioner to plead guilty to a misdemeanor. The prosecutor, Tara Mooney, testified Brown called her in February 2013 and reported that petitioner was "not interested in pleading guilty to any felony in this case" but was "sure" he would be acquitted. Mooney memorialized this conversation in an email to the investigating officers, which

was admitted at the evidentiary hearing.  Mooney also testified Brown told her petitioner would plead guilty to a misdemeanor but she "would not have made a misdemeanor offer."  Mooney further testified she prosecuted petitioner in four prior cases, she offered him plea agreements in those prior cases, and each time petitioner refused the plea agreements.

At the evidentiary hearing, petitioner testified on cross-examination that none of his attorneys advised him at any time that he could be confident an appellate court would conclude his statutory speedy trial rights had been violated.  Petitioner also testified that if counsel advised him the speedy trial clock began to run from the day he was indicted, he would have told Brown to obtain a plea deal in writing and would have accepted either a felony or misdemeanor plea offer.  The circuit court rejected this portion of petitioner's testimony and found no reasonable possibility of the case resolving in a plea agreement, leaving petitioner with the choice of pleading guilty and submitting sentencing to the trial court, or pleading not guilty and proceeding to trial.  The circuit court found "absolutely no evidence in the record to suggest that Petitioner would have considered the former option." This Court is bound by that finding, as it is not plainly wrong or without evidentiary support.  Thus, petitioner has failed to demonstrate there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

Record No. 170372.

This Court finds that the state court's determination was not contrary to or an unreasonable application of federal law.  Cf. Merzbacher v. Shearin, 706 F.3d 356 (4th Cir. 2013); Souders v. Dauffenbach, No. 17-cv-2883-RM, 2018 WL 9458259 (D. Col. Sept. 24, 2018) (finding § 2254 petitioner not entitled to relief where petitioner failed to provide clear and convincing evidence to overturn state court's conclusion petitioner would have accepted plea offer but for counsel's performance).

Moreover, the trial court's findings of fact and conclusions were supported by the evidence presented at the April 25, 2018 evidentiary hearing, and the state supreme court's conclusion that the trial court was not "plainly wrong or without evidentiary support" was equally reasonable.  Petitioner has not provided clear and convincing evidence to contradict

those factual determinations.  See 28 U.S.C. § 2254(e)(1); Hogan v. Sec'y, Fla. Dept. of Corrs.,

No. 3:16-cv-446-J-34MCR, 2018 WL 6304840 (M.D. Fla. Dec. 3, 2018).

On this basis, Ground Three is denied.[3]

3.      *Ground Four*

In Ground Four, petitioner asserts that trial counsel was ineffective for failing to insist

upon the provision of jury instructions regarding an "accommodation defense" to the possession

with intent to distribute conviction.[4]  With respect to this claim, the Supreme Court of Virginia

held as follows:

> Although counsel timely argued at the penalty phase that the evidence showed
> petitioner intended to distribute the drugs as an accommodation, the court
> erroneously ruled that it could not find an accommodation unless the issue was
> "argued and instructed on the case [in] chief."  Petitioner contends counsel should
> have objected to the court's ignorance of the relevant law" as the mitigation of
> punishment must be done in the penalty phase and not the case in chief.
>
> The Court holds this portion of claim (2) fails to satisfy the "prejudice" prong of
> the two-part test enunciated in *Strickland*.  The record, including the trial
> transcript, fails to demonstrate any evidence petitioner agreed to meet the
> informant to distribute the Oxycodone to him as an accommodation.  Petitioner
> testified he planned to meet the informant to pay Flood's debt to him and receive
> Flood's Dilaudid pills in exchange.  Thus, petitioner has failed to demonstrate
> there is a reasonable probability that, but for counsel's alleged errors, the result of
> the proceeding would have been different.

----

[3] Petitioner argues that the evidentiary hearing was "materially incomplete" because the attorney
who represented him at the hearing faced claims of ineffective assistance himself, thereby
creating a conflict of interest.  See Dkt. No. 33, p. 29.  However, petitioner's counsel, James
Ilijevich, did not represent petitioner until his appeal.  Because the state supreme court ordered
an evidentiary hearing dealing only with issues relevant to trial and plea agreements, petitioner's
argument is misplaced.

[4] Virginia Code § 18.2–248(D) provides for mitigation of punishment where one convicted of
distribution is found not to be a drug dealer, "but by an individual citizen … motivated by a
desire to accommodate a friend, without any intent to profit or to induce or to encourage the use
of drugs."  Stillwell v. Commonwealth, 219 Va. 214, 219 (1978).  The statute establishes a
presumption against an accommodation distribution and requires the defendant to prove
accommodation by a preponderance of the evidence.  See id. at 219, 225, 247.

Record No. 170372.[5]

This determination was neither contrary to federal law nor based on an unreasonable determination of facts.  The jury found petitioner guilty of possessing oxycodone with intent to distribute it despite petitioner's testimony that this was not the case.  Petitioner appears to misunderstand this ruling and believes he was entitled to an accommodation defense based on his version of events—that he sought to meet the informant with respect to his girlfriend's debt and Dilaudid medication, which he claimed to be taking possession of for her.  But because petitioner was not convicted of possessing Dilaudid with intent to distribute it, he was not entitled to an accommodation mitigation instruction at sentencing under that theory, a theory that the jury had rejected as false.

Petitioner has thus failed to demonstrate that a more vociferous argument from counsel would have led to a different result and is therefore not entitled to relief under this claim.  See, e.g., Johnson v. Jackson-Mitchell, No. 3:19-cv-287, 2019 WL 4345689, at *3(S.D. Ohio Sept. 12, 2019) ("If there was no factual basis for such a claim, then it could not be ineffective assistance of trial counsel under Strickland to fail to raise the claim.").

4.   *Ground Five*

In Ground Five, petitioner asserts that trial counsel was ineffective for failing to investigate witnesses and evidence and for "sabotaging" petitioner's defense "by motioning to quash critical evidence without talking to anyone about what the evidence was."  Specifically,

---

[5] Petitioner takes issue with the Supreme Court of Virginia's conclusion that trial counsel "argued" this point.  Petitioner effectively claims that counsel limply accepted the trial court's decision without a fight.  This argument is irrelevant, for the state supreme court's determination that petitioner bore no prejudice was not contrary to federal law or based on an unreasonable determination of the facts.

petitioner suggests that the records and testimony counsel failed to obtain would have undermined the testimony of the Commonwealth's witness, who claimed that petitioner was in possession of brand name "Roxicodone," which, because it is crushable, carries a higher street value than the generic "Oxycodone." Dkt. No. 33, pp. 46-47. Petitioner argues that the evidence counsel failed to produce would have "proved [petitioner] had the Generics," not the name brand pills. Id.

The Supreme Court of Virginia denied relief as to this claim, finding that petitioner "fail[ed] to proffer the evidentiary value of the medical records or the substance of the pharmacist's testimony," and thereby failed to satisfy either prong of the Strickland inquiry. See Record No. 170372. Petitioner argues this conclusion was unreasonable and that he did provide the evidence in question, directing the Court to "[SH, FN-8 Pg.21]". The Court takes this to mean footnote eight on page twenty-one of petitioner's state habeas petition. There, petitioner states only that "[h]ad JB had the records from the phrmacy [sic] & the pharmacist subpoenaed the false testimony would have been exposed & the expert impeached. Prejudice." Id. This vague description was clearly not enough to support a finding that counsel was ineffective for declining to present the evidence petitioner describes. See, e.g. Patel v. United States, 19 F.3d 1231, 1237 (7th Cir. 1994) ("Where a petitioner claims his trial counsel failed to call a witness" or introduce certain evidence, "he must make a *specific, affirmative showing* as to what the missing evidence would have been, … and prove that this witness's testimony [or evidence] would have produced a different result.") (emphasis added) The state court's conclusion was thus not unreasonable legally or factually, and this claim is denied on that basis.

Even if one were to conclude that the state court's findings were not entitled to deference, however, it would be clear that petitioner would still not be entitled to relief. As petitioner

concedes, counsel *did* present evidence to impeach the veracity of the expert's testimony.  Dr.

Bajwa, a defense witness, testified that he had prescribed petitioner generic oxycodone, not the

name brand Roxicodone pills:

> COUNSEL: So the – you did not write a prescription for Roxycodone, did you?

> DR. BAJWA: No. It was Oxycodone.

> COUNSEL: Okay. But when I asked you if it was a prescription for Roxycodone–

> DR. BAJWA: (interjecting) – Well, it's the same thing. I mean, Roxycodone and Oxycodone are the same drug, just Roxycodone is a brand name version of Oxycodone. It's the same thing.

> COUNSEL: Okay. But you didn't write him for Roxycodone?

> DR. BAJWA: No. No. I wrote it for Oxycodone.

> COUNSEL: The generic?

> DR. BAJWA: Right.

Tr. Trans. March 11, 2013, pp. 397-400.

Accordingly, to present additional information undermining the Commonwealth's expert

witness would merely have been cumulative presentation of impeachment evidence, and an

attorney's failure to present such evidence does not constitute deficient performance.  See Hash

v. Dir. Dep't of Corrs., 278 Va. 664, 679 (2009) (finding in context of state habeas proceedings

that, where witness had already been impeached during criminal trial, "any potential further

impeachment … would [have been cumulative and would] not have yielded a reasonable

probability of a different result at trial") (citing Lester v. Ayers, 267 F. App'x 725, 727 (9th Cir.

2008); Aldridge v. Dugger, 925 F.2d 1320, 1326 (9th Cir. 1991)).

Although his argument borders on incoherent, petitioner also appears to suggest in a

subclaim of Ground Five that counsel Joe Brown was ineffective for failing to call Kim Burgess

as a witness on petitioner's behalf. Dkt. No. 33, p. 49.  He contends that Burgess would have testified that she, not petitioner, had authored several of the text messages introduced to prove petitioner's guilt at trial.  Id.  The state supreme court found that this claim satisfied neither prong of the Strickland inquiry:

> The testimony [petitioner] proffers Burgess and the informant would have provided was not relevant or helpful, given the evidence at trial.  The record, including the trial transcript, demonstrates Deputy McBride testified he "was masquerading as the owner" of the informant's cell phone when he texted "Don" to arrange a purchase of prescription pills.  Don texted back, "I got the thirties instead" to which McBride responded "text me when I should leave the house and where to go and what should I expect you in and you with your girlfriend, you know, what type of car."  Immediately after that text, Don called the informant's phone.  McBride took the phone to the informant and had him return the call.  The informant spoke to Don and told McBride "that Don had agreed to meet him."  McBride then resumed texting Don, who said his girlfriend was driving him to a McDonald's restaurant where they could meet.  When Don texted he had arrived, McBride observed petitioner in passenger seat of his car with his girlfriend, Flood, driving.  Deputy Volpe testified petitioner and Flood were the only people in the car.  Police arrested petitioner who had the 30-milligram Oxycodone pills and the cell phone used to text McBride.  Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

Record No. 170372.

The Court finds that this determination was not contrary to federal law nor based on an unreasonable determination of facts.  In the context of a § 2254 petition, "[j]udicial scrutiny of counsel's performance must be highly deferential," and a reviewing court must remember that counsel is "permitted to determine trial strategy, and press those claims with the greatest chance of success."  Strickland at 689; United States v. Mason, 774 F.3d 824, 828 (4th Cir. 2014).  It is clear that petitioner adduced at trial that he was not responsible for authoring several of the text messages presented against him.  See Tr. Trans. March 12, 2013, pp. 45-194.  Accordingly, Burgess's proposed testimony merely would have constituted cumulative evidence that petitioner

had not written the texts in question, and "the failure to present cumulative evidence is generally not prejudicial."  Valentino v. Clarke, 972 F.3d 560, 584 (4th Cir. 2020).  Accordingly, it is clear that petitioner is not entitled to relief with respect to this claim.

## C.        Ground Six – Fraud on the Court [6]

In Ground Six, petitioner states that prosecutor Tara Mooney committed fraud on the court when she "maintained [a charge] that she kn[ew] [was] not supported by probable cause." Dkt. No. 33, p. 22.  This argument appears to stem from the fact that prosecutor Tara Mooney sought and gained an indictment against petitioner for a charge that a district court judge had previously held lacked probable cause.  Petitioner also apparently asserts that the ability of a prosecutor to gain an indictment when a judge has already found a lack of probable cause is a violation of separation of powers.

Fraud on the court is "not your garden-variety fraud."  Fox v. Elk Run Coal Co., 739 F.3d 131, 135 (4th Cir. 2014).  It is instead limited to "the most egregious cases," such as "bribery of a judge or juror, or improper influence exerted on the court by an attorney, in which the integrity of the court and its ability to function impartially is directly impinged."  Great Coastal Express, Inc. v. Int'l Bhd. of Teamsters, 675 F.2d 1349, 1356 (4th Cir. 1982).  Fraud on the court requires "an intentional plot to deceive the judiciary," and must "touch on the public interest in a way that fraud between individual parties generally does not."  Fox, 739 F.3d at 136.

The Court finds that petitioner has not satisfied his burden with respect to the issue of fraud on the court.  Although petitioner may agree with the district judge that the Commonwealth

---

[6] As stated in a footnote above, petitioner inappropriately raised Ground Six under the umbrella of ineffective assistance of counsel.  It is unclear why petitioner did so because it is clear that counsel raised the relevant issue—whether the prosecutor committed fraud on the court—before trial and on appeal.  Accordingly, the merits of the claim—as distinct from the ineffective assistance analysis—are analyzed here.

could not establish probable cause as to his intent to distribute oxycodone, he has not offered any factual allegations that support the notion that Ms. Mooney knowingly presented false information to the grand jury or otherwise sought to manipulate the state's machinery with respect to the state's online case information.  State law did not prohibit Ms. Mooney's action, see Moore v. Commonwealth, 218 Va. 388 (1977), and the Supreme Court of Virginia found as much in denying petitioner relief.  See Record No. 170372 ("We reject Herrington's argument that the indictment was improper or that the Commonwealth engaged in action that was "not lawful.") (citing Moore).

This determination was not contrary to federal law.  Indeed, the Court is unable to locate any federal precedent suggesting that the Commonwealth's effort to secure an indictment against petitioner was unlawful.  Federal courts addressing other states' provisions allowing similar acts have declined to find those provisions unlawful.  See, e.g., Smith v. United States, 170 F. App'x 971 (7th Cir. 2006) (noting propriety of attorney's failure to object to indictment where Illinois statute allowed presentation of case to grand jury after judge's finding of lack of probable cause at preliminary hearing); Bickon v. Neven, No. 2:10-cv-PMP-GWF, 2013 WL 1010434, at *18 (D. Nev. Mar. 13, 2013) (finding Nevada law which allowed indictment after dismissal of charge at preliminary hearing "not contrary to clearly established federal law").  Accordingly, this ground is denied.

D.     **Ground Seven – Denial of Right to be Present**

In Ground Seven, petitioner argues that the state court improperly "issued a new sentence order ex parte" four years after the conclusion of his trial.  Petitioner argues that this action deprived him of his right to be present and represented by counsel at a "critical stage of the proceedings."  See Dkt. No. 33, p. 24.  Petitioner advanced this argument to the Supreme Court

24

of Virginia, which denied the argument without thorough explanation.  See Record No. 181594.
In such a circumstance, this Court "must determine what arguments or theories supported or …
could have supported [] the state court's decision; and then it must ask whether it is possible that
fairminded jurists could disagree that those arguments or theories are inconsistent with the
holding in a prior decision of [the Supreme Court]."  Harrington v. Richter, 562 U.S. 86, (2011).

The United States District Court for the Northern District of California addressed a
contention similar to petitioner's in Orozco v. Diaz, No. 19-cv-5828-EMC, 2020 WL 5107107
(N.D. Cal. Aug. 31, 2020).  There, the petitioner took issue with a court clerk's revision of a
scrivener's error of a sentencing document, claiming that his absence for such an event denied
him his right to be present "at any stage of the criminal proceeding that is critical to its
outcome."  Orozco, at *4 (citing Kentucky v. Stincer, 428 U.S. 730, 745 (1987)).  The California
federal court found that the state court "reasonably could have concluded that the ministerial act
of a court clerk … was not a critical stage of the proceedings where Mr. Orozco's presence
would have contributed to the fairness of the proceeding.  Id. at *5 (citing Turner v. Baker, 912
F.3d 1236, 1239 (9th Cir. 2019) ("When an amended judgment corrects a scrivener's error, it
does not change the underlying judgment, but only the written record that erroneously reflects
that judgment.  As a result, an amended judgment correcting a scrivener's error has no legal
consequences.").

The same logic can be applied in this case; what petitioner calls "a new sentencing order"
was, in actuality, an amended order issued to correct a scrivener's error.  The fixing of the
scrivener's order in petitioner's criminal case did not itself constitute a resentencing as petitioner
appears to argue.[7]  Instead, this was a ministerial act conducted to conform the sentencing order

---

[7] Petitioner takes issue with the notion that this constituted a scrivener's error in the first

to the proceedings and charges which petitioner was arraigned for and found guilty of at trial.

Petitioner does not cite to any Supreme Court precedent which holds he was entitled to be

present for such an event, nor can this Court locate any such authority. And "it is not an

unreasonable application of clearly established Federal law for a state court to decline to apply a

specific legal rule that has not been squarely established by th[e] [Supreme Court]." Harrington,

562 U.S. at 101. Accordingly, the state court's rejection of petitioner's claim was not contrary to

clearly established Supreme Court law and is properly denied at this juncture.

## IV. Conclusion

For the reasons stated above, respondent's motion to dismiss will be granted through and

Order that will accompany this Memorandum Opinion.

Entered this  30  day of  March  2021.

Alexandria, Virginia

/s/
Anthony J. Trenga
United States District Judge

---

instance. Citing a Virginia case dealing with contract law, he argues that "scrivener's errors are
those which are demonstrably contradicted by all other documents." Dkt. No. 33, p. 23 (citing
Westgate at Williamsburg Condo. Assoc, Inc. v. Philip Richardson Co., Inc., 270 Va. 566, 575
(2005)). Federal courts have interpreted the term differently with respect to the amendment of
criminal judgments. See, e.g., Gonzalez v. Sherman, 873 F.3d 763, 772 (9th Cir. 2017) ("A
scrivener's error occurs when there is a discrepancy between the court's oral pronouncement of
the judgment and the written record of that judgment."). And as is explained in the body of this
opinion, "[w]hen an amended judgment corrects a scrivener's error, it does not change the
underlying judgment, but only the written record that erroneously reflects that judgment. As a
result, an amended judgment correcting a scrivener's error has no legal consequences." Turner
v. Baker, 912 F.3d 1236, 1239 (9th Cir. 2019).